| | |
|---|---|
| MICHAEL GILMORE, | CASE NO. C16-1617-MJP |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| BOEING COMPANY, | |
| Defendant. | |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THIS MATTER comes before the Court on the parties' Motions for Summary Judgment. Having reviewed the Motions (Dkt. Nos. 32, 36), the Responses (Dkt. Nos. 54, 69), the Replies (Dkt. Nos. 61, 76), and all related papers, and having considered the statements of the parties at oral argument, the Court GRANTS Defendant's Motion in its entirety and DENIES Plaintiff's Motion in its entirety.

**Background**

Plaintiff Michael Gilmore filed this action against The Boeing Company ("Boeing") for employment discrimination on the basis of race and disability. Plaintiff asserts claims for employment discrimination, hostile work environment, retaliation, and failure to accommodate

his disability under the Washington Law Against Discrimination ("WLAD"), 42 U.S.C. § 2000e, et seq. ("Title VII"), 42 U.S.C. § 1981, et seq. ("Section 1981"), and the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA").

Plaintiff, who is African American and suffers from obstructive sleep apnea, worked for Boeing as a Nondestructive Inspection Technician ("NDI Technician") from September 2011-August 2015 in its Tukwila and Auburn facilities. (Dkt. No. 1 at 3, 5; Dkt. No. 69 at 2.) As an NDI Technician, Plaintiff was tasked with inspecting airplane parts for imperfections and defects. (Dkt. No. 36 at 2-3.) As these parts were later to be incorporated into passenger airplanes, accuracy and attention to detail in their inspection were critical. (Id. at 2.)

As a result of his sleep apnea, Plaintiff claims he suffered from daytime somnolence which made it difficult for him to stay awake at work. Boeing claims Plaintiff was repeatedly observed sleeping at work, and was repeatedly advised to request an accommodation. The relevant timeline of events is as follows:

Between 2011-2012, Plaintiff was observed sleeping at work several times. (Dkt. No. 36 at 3.) When confronted by his supervisor, Paul Adams, Plaintiff explained that he had a medical condition. (Id.) Mr. Adams advised Plaintiff to initiate a request for accommodation with Boeing Medical. (Id.)

In 2013, after Mr. Adams observed him sleeping at work several more times, Plaintiff identified his condition as sleep apnea. (Id. at 4.) Plaintiff requested to work a later shift, which he explained would help him accommodate his sleep apnea. (Id.) Mr. Adams granted the request and again advised Plaintiff to initiate a request with Boeing Medical. (Id.)

In June 2014, Mr. Adams again observed Plaintiff sleeping at work. (Id.) Mr. Adams referred the matter to Human Resources for discipline. (Id. at 4-5.)

On July 15, 2014, after learning of the pending discipline, Plaintiff submitted medical documentation to Boeing Medical. (Id. at 5; Dkt. No. 38, Ex. D.) Boeing's Reasonable Accommodation Procedure required that such documentation identify both "the medical necessity of the requested accommodation" and the employee's "functional limitations." (Dkt. No. 36 at 3 n.2.) Plaintiff's documentation showed he had been diagnosed with sleep apnea on June 1, 2010, but did not identify functional limitations nor recommended any accommodation. (Dkt. No. 38, Ex. D.)

On July 25, 2014, Boeing issued Plaintiff a Corrective Action Memorandum ("CAM") for sleeping at work (the "July 2014 CAM"). (Dkt. No. 36 at 5; Dkt. No. 40, Ex. S.)

In January 2015, Joseph Benavides assumed supervision over Plaintiff and other NDI Technicians in his group. (Dkt. No. 36 at 6.) During a team meeting, Mr. Benavides greeted Plaintiff by saying "good morning, sunshine," and thereafter referred to him as "sunshine" several more times. (Id.; Dkt. No. 69 at 5.) At the same team meeting, Plaintiff claims he overheard Mr. Benavides use the term "little hood rats." (Id. at 6.) On January 27, 2015, Plaintiff told Mr. Benavides he found the term "sunshine" racially offensive. (Dkt. No. 38, Ex. H.)

Around the same time, Mr. Benavides confronted Plaintiff regarding problems with his attendance, including chronic lateness. (Dkt. No. 36 at 6.) Plaintiff explained that he suffered from sleep apnea and asked Mr. Benavides for help using his leave benefits. (Id.) Mr. Benavides advised Plaintiff to contact Boeing Medical, and provided him with a Reasonable Accommodation and Health Care Provider Form (the "Reasonable Accommodation Form"). (Id.)

On January 23, 2015, Plaintiff submitted the Reasonable Accommodation Form to Boeing Medical along with documentation from his physician stating he needed to "come into work occasionally late as he will sleep through alarm." (Dkt. No. 36 at 6-7; Dkt. No. 38, Ex. E.) Boeing's Disability Management Representative reviewed the request with Plaintiff, and together they agreed he would use Family Medical Leave Act ("FMLA") leave and personal leave to adjust his schedule as needed. (Dkt. No. 36 at 7; Dkt. No. 38, Ex. H.) Plaintiff claims he was not late to work once offered this accommodation. (Dkt. No. 36 at 7; Dkt. No. 38-7 at 192:4-10.)

Around May 2015, Plaintiff voluntarily transferred from Boeing's Tukwila facility to its facility in Auburn. (Dkt. No. 36 at 3.) Plaintiff requested a later shift in Auburn, but was told this would not be feasible given the facility's production environment and shift schedule. (Id. at 7.) Mr. Benavides advised Plaintiff to continue using FMLA and personal leave to adjust his schedule as needed. (Id.)

On July 13, 2015, Plaintiff received a second CAM for failing to comply with a company policy requiring NDI Technicians to log out of a document called the "NDI log" (the "July 2015 CAM"). (See Dkt. No. 40, Ex. U.) The NDI log was used to record and track airplane part inspections, and Boeing claims that failure to exit the log properly resulted in lost data and lost production time. (Dkt. No. 36 at 8.) Boeing claims that prior to the July 2015 CAM, Plaintiff and other NDI Technicians were repeatedly warned that failure to exit the log properly would result in discipline. (Id.)

On August 11, 2015, Plaintiff received a third CAM for violating Boeing's "No Walk Away Policy," which prohibited employees from leaving a certain machines unattended. (Id. at 9.) Boeing claims Plaintiff improperly left an AUSS machine unattended for over an hour, and

1 as a result "gallons of water spilled out of the tank and onto the shop floor near live electrical outlets." (Id.; Dkt. No. 40, Ex. M.)

Pursuant to company policy, Plaintiff was terminated in August 2015 for having received his third CAM in one year. (Dkt. No. 36 at 9-10.)

Boeing now moves for summary judgment as to each of Plaintiff's causes of action. (Dkt. No. 36.) Plaintiff moves for summary judgment as to each of Boeing's affirmative defenses. (Dkt. No. 32.)

**Discussion**

I.  **Boeing's Motion to Strike**

Boeing moves to strike the Declaration of Donald Morrow. (Dkt. No. 72.) "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). Mr. Morrow's declaration consists of inadmissible hearsay and speculation regarding alleged racial and disability discrimination against Plaintiff. (Id.) For instance, Mr. Morrow, who was also supervised by Mr. Adams, states that he "noticed that when Mr. Gilmore was working on a shift at least one manager or lead was at the work station" nearby. (Dkt. No. 72 at 4.) Mr. Morrow speculates that "the station was created . . . to monitor Mr. Gilmore." (Id.) Mr. Morrow also speculates that "[t]he non-disabled Caucasian employees who are favorites of Mr. Adams are not or have not been disciplined for acts which other similarly-situated employees are disciplined." (Id. at 7.) While it is not apparent how Mr. Morrow reaches these conclusions, they appear to be no more than conjecture.

Therefore, the Court GRANTS Boeing's Motion to Strike. The Declaration of Donald Morrow is stricken in its entirety and is not relied upon the Court's consideration of the Motions for Summary Judgment.

## II. Boeing's Motion for Summary Judgment

### a. Legal Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986). A mere scintilla of evidence supporting the nonmovant's position is insufficient to withstand summary judgment; there must be evidence on which the jury could reasonably find for the nonmovant. Id. at 252.

While "summary judgment in favor of an employer in discrimination cases is often inappropriate because the evidence will generally contain reasonable but competing inferences of both discrimination and nondiscrimination," this does not mean that "discrimination cases may never be disposed of on summary judgment." Kuyper v. State, 79 Wn. App. 732, 739 (1995) (citation omitted. A plaintiff "must do more than express an opinion or make conclusory statements." Marquis v. City of Spokane, 130 Wn.2d 97, 105 (1996) (citation omitted).

### b. Employment Discrimination

To establish a prima facie case of employment discrimination, Plaintiff must show: (1) that he is a member of a protected class; (2) that he was qualified for his position and performing satisfactory work; (3) that he suffered an adverse employment action; and (4) that similarly situated employees outside his protected class received more favorable treatment. Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010) (citation omitted); Davis v. West One Auto.

Grp., 140 Wn. App. 449, 459 (2007). Alternatively, Plaintiff may provide evidence of "other circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination." Hawn, 615 F.3d at 1156. If Plaintiff succeeds, the burden shifts to Boeing to articulate a legitimate, non-discriminatory reason for the adverse employment action. Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

Boeing does not dispute that Plaintiff satisfies the first and third requirements, but contends he has not proved either that he was performing satisfactory work or that employees outside his protected class were treated differently.

### i. Satisfactory Work

Plaintiff has not shown that he was performing satisfactory work prior to his termination. While Plaintiff claims he was a "skilled, experienced, and qualified NDI technician who performed his work satisfactorily" (Dkt. No. 69 at 3) and that the CAMs he received were pretext, his claims are unsupported. Most favorably, Plaintiff was described as "technically competent" (Dkt. No. 78-1 at 47) and not a "problematic employee." (Id. at 28.) Other evidence indicates Plaintiff's performance was inconsistent. For instance, Mr. Benavides explained that Plaintiff had "attendance issues" and "terrible time management skills," and that his "work habits and patterns were not consistent." (Dkt. No. 40-12 at 2-3.) Mr. Adams explained that Plaintiff's practice of sleeping at work was "habitual." (Dkt. No. 40-8 at 13.)

Further, an employee "who violates company policy and fails to improve his performance despite a warning has not demonstrated satisfactory performance." Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1208 (9th Cir. 2008) (citation omitted). Each of the CAMs Plaintiff received was preceded by warnings that failure to comply with company policy would result in discipline. Even viewing all of the evidence in the light most favorable to Plaintiff, it appears he

was terminated not because of his race or disability, but rather because he repeatedly violated company policies and failed to comply with managers' instructions.

### ii. Comparators

Plaintiff has not shown that similarly situated employees outside his protected class received more favorable treatment. Instead, Plaintiff merely claims there is "no evidence" that "any employee other than him" was ever "disciplined for failure to log out of the NDI log" or "issued a CAM or terminated" for violating the No Walk Away policy. (Dkt. No. 69 at 16.)

Plaintiff fails to offer admissible evidence in support of either claim. Plaintiff relies entirely upon the Declarations of Gina Barron (Dkt. No. 71) and Donald Morrow (Dkt. No. 72). Mr. Morrow's declaration has been stricken in its entirety. Ms. Barron's declaration is similarly unavailing. For instance, Ms. Barron, who does not hold a managerial or human resources role, states that she does not "know of any NDI employee other than [Plaintiff] who has been disciplined for failing to log out [of the NDI log]." (Dkt. No. 71 at 3-4.) Ms. Barron also states "I asked [a Caucasian employee] whether he had been written up for violating the 'no walk away' policy. He said that he had not received a [CAM] or anything else." (Id. at 5.) In addition to being based upon inadmissible hearsay and speculation, Ms. Barrons' claims are directly contradicted by other evidence in the record. (See, e.g., Dkt. No. 77-4 at 4-6; Dkt. No. 77-6 at 12.) For instance, Plaintiff testified, and Boeing confirmed, that at least one Caucasian employee received a CAM violating the No Walk Away policy. (Dkt. No. 70-1 at 55; see also Dkt. No. 81-2.)

Ultimately, although an employee's burden in opposing an employer's motion for summary judgment is minimal, Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1124 (9th Cir. 2000), Plaintiff has not met his burden with respect to his employment discrimination claims.

Plaintiff has demonstrated neither that he was doing satisfactory work, nor that comparators were treated more favorably, and has not offered any other evidence giving rise to an inference that Boeing's actions were motivated by his race and disability.

Therefore, the Court GRANTS Boeing's Motion with respect to employment discrimination.

### c. Hostile Work Environment

Plaintiff has indicated to the Court that he does not intend to pursue his claim for hostile work environment. Therefore, the Court GRANTS Boeing's Motion with respect to hostile work environment.

### d. Reasonable Accommodation

To sustain a failure to accommodate claim, Plaintiff must show that (1) he had a disability as defined by the ADA or WLAD; (2) he was qualified to perform the essential functions of his job; (3) he gave Boeing notice of his disability and limitations; and (4) upon notice, Boeing failed to adopt measures available to it in order to accommodate the disability. Hylinger v. Union Pacific R.R., 538 F. Supp. 2d 1325, 1330-31 (W.D. Wash. 2008); Davis v. Microsoft Corp., 149 Wn.2d 521, 532 (2003) (en banc). Boeing does not dispute whether Plaintiff suffered from sleep apnea, but contends that he did not give notice of his disability and its accompanying limitations until January 2015. Notwithstanding his failure to do so, Boeing contends it provided him with a reasonable accommodation.

#### i. Notice of Disability and Limitations

While "[a]n employee is not required to use any particular language when requesting an accommodation [and] need only inform the employer of the need for an adjustment due to a medical condition," an employer's liability for failure to accommodate "ensues only where the

employer bears responsibility for breakdown in the interactive process." Zivkovic v. Southern Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002) (citations and internal quotation marks omitted). "Where the employer has established reasonable procedures for making and handling accommodation requests, it may expect its employees to utilize those procedures absent extenuating circumstances. An employee's oral request cannot trump an employer's established procedure for requesting and approving disability accommodations." Bedeski v. Boeing Co., No. C14-1157RSL, 2015 WL 5675427, at *3 (W.D. Wash. Sept. 25, 2015) (citations and internal quotation marks omitted).

Plaintiff claims Boeing had notice of his condition, as he disclosed the diagnosis when he was hired, provided documentation of his diagnosis, and reported the disability to Mr. Adams and Mr. Benavides. The Court finds that, although Plaintiff repeatedly told his managers he suffered from sleep apnea, he did not submit a Reasonable Accommodation Form to Boeing Health Services until January 28, 2015. (Dkt. No. 36 at 6-7; Dkt. No. 40-14.) Until this time, Boeing did not have any obligation to accommodate Plaintiff under the ADA or WLAD. See Bedeski, 2015 WL 6575427, at *1-2.

Between 2011-2015, both Mr. Adams and Mr. Benavides repeatedly advised Plaintiff to initiate a request with Boeing Medical. In 2014, Plaintiff submitted a document stating that he had sleep apnea, without a recommendation for an accommodation. (Dkt. No. 40-13 at 2-3.) As in Bedeski, Plaintiff "does not dispute that [he] failed to follow Boeing's procedure" for requesting an accommodation, nor does he claim that Boeing's "procedures for making the request were onerous, unreasonable, or otherwise unenforceable." Bedeski, 2015 WL 6575427, at *1-2. As Boeing "clearly and repeatedly set forth the steps" for requesting an accommodation, Plaintiff's submission of "medical documentation without a corresponding request [was]

ambiguous and did not trigger the interactive process" under either the ADA or WLAD. Id. at *3.

### ii. Boeing's Efforts to Accommodate Plaintiff's Disability

Notwithstanding Plaintiff's failure to follow Boeing's established procedure for requesting an accommodation, Boeing accommodated his sleep apnea for years by allowing him to work a later shift at the Tukwila facility and allowing him to use FMLA and personal leave to arrive late to work as needed. While Plaintiff claims Boeing should have allowed him to work a later shift at the Auburn facility, Boeing was not obligated to do so. See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002) ("An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation."); Elkins v. North Seattle Community College, No. C08-1466RSL, 2009 WL 3698516, at *3 (W.D. Wash. Nov. 3, 2009) ("Although plaintiff might have preferred an alternate schedule in his former position, defendants were not required to provide plaintiff with his preferred accommodation.").

### iii. Plaintiff's Ability to Perform Essential Functions

Finally, Plaintiff has not demonstrated that he was able to perform the essential functions of his job, with or without an accommodation. Plaintiff's role as an NDI Technician required him to inspect airplane parts for defects and required continuous monitoring of heavy machinery. Plaintiff does not dispute that he was unable to perform these functions while sleeping, nor does he dispute that he continued to fall asleep at work even after accommodated with a later shift.

Therefore, the Court GRANTS Boeing's Motion with respect to failure to accommodate.

e. **Retaliation**

To establish a prima facie case of retaliation under Title VII and WLAD, Plaintiff must show that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between his activity and the employment decision. Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003). To establish causation, Plaintiff must show that "but for" the protected activity, he would not have been disciplined or terminated. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064-65 (9th Cir. 2002) (citation omitted).

Plaintiff has not established causation. Plaintiff claims he was issued unwarranted CAMs and was ultimately terminated in retaliation for his complaints to Mr. Benavides about his use of the term "sunshine" and his requests for a later shift. (Id.) However, Plaintiff concedes that he violated company policies by failing to log out of the NDI log, and that he left the ASUS tank unattended. While Plaintiff argues that the CAMs he received were discriminatory and pretextual, he offers no admissible evidence to support his claim, and relies upon conjecture and conclusory allegations. Further, it was clearly Boeing's policy that an employee who received three or more CAMs within one year would be subject to termination.

Therefore, the Court GRANTS Boeing's Motion with respect to retaliation.

**III. Plaintiff's Motion for Summary Judgment**

Having granted Boeing's Motion in its entirety, the Court finds that the affirmative defenses at issue in Plaintiff's Motion are now moot. Accordingly, the Court DENIES Plaintiff's Motion in its entirety.

**Conclusion**

Because Plaintiff has not raised a genuine issue of material fact with respect to his claims for employment discrimination, failure to accommodate, and retaliation, and because Plaintiff does not oppose Boeing's Motion with respect to his claim for hostile work environment, the Court GRANTS Boeing's Motion for Summary Judgment (Dkt. No. 36) in its entirety. Because Plaintiff's Motion regarding his affirmative defenses is now moot, the Court DENIES Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 32) in its entirety.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 14, 2018.

Marsha J. Pechman
United States District Judge